**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS FOX, | : |
| | : |
|     *Plaintiff*, | : Case No.: 2:21-cv-1626 |
| | : |
| v. | : |
| | : |
| | : **COMPLAINT IN CIVIL ACTION** |
| M AND B REDI MIX, INC. d/b/a | : |
| DUBROOK, | : |
| | : |
|     *Defendant*. | : |

Filed on Behalf of Plaintiff:
Thomas Fox


Counsel of Record for this Party:
**J.P. WARD & ASSOCIATES, LLC**


Joshua P. Ward
Pa. I.D. No. 320347


J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206


Telephone:      (412) 545-3015
Fax No.:         (412) 540-3399
E-mail:          jward@jpward.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THOMAS FOX,** | : |
| *Plaintiff,* | : |
| v. | : Case No.: 2:21-cv-1626 |
| **M AND B REDI MIX, INC. d/b/a DUBROOK,** | : |
| *Defendant.* | : |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Thomas Fox, by and through the undersigned counsel, J.P. Ward & Associates, LLC and, specifically, Joshua P. Ward, Esquire, who files the within Complaint in Civil Action against Defendant, M and B Redi Mix, Inc. d/b/a Dubrook, of which the following is a statement:

## PARTIES

1. Plaintiff, Thomas Fox (hereinafter "Plaintiff"), is an adult individual who currently resides at 211 Rural Drive, Butler, Pennsylvania 16001.

2. Defendant, M and B Redi Mix, Inc. d/b/a Dubrook, (hereinafter "Defendant"), is a corporation with its principal place of business located at 88 Glenn Redi Mix Lane, Clarion, Pennsylvania 16214.

1

**JURISDICTION AND VENUE**

3. Jurisdiction is proper as Plaintiff brings this lawsuit under Title VII of the Civil Rights Act of 1964 (hereinafter, "Title VII") 42 U.S.C. § 2000e et seq., the Pennsylvania Human Relations Act ('hereinafter, "PHRA") 43 P.S. §§ 951-963, and the Families First Coronavirus Response Act (hereinafter, the "FFCRA").

4. Plaintiff is a resident and citizen of Pennsylvania, a substantial amount of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 25 U.S.C. § 1391(b).

**PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS**

5. Plaintiff began his employment with Defendant on or about 2013.

6. During his time with Defendant, Plaintiff was first employed as a driver, then a concrete mixer, and eventually, Plaintiff was promoted to the position of batch manager.

7. Plaintiff was a dedicated employee who was qualified for the position he held with Defendant.

8. At all times relevant hereto, Plaintiff identified as a homosexual man.

9. On or about 2017, upon the change in ownership of Defendant corporation, Plaintiff began to experience constant harassment and discrimination on the basis of his sexual orientation.

10. Plaintiff's superiors and coworkers, including Bill McFarland (hereinafter, "Mr. McFarland"), John Lawrence (hereinafter, "Mr. Lawrence"), and Eric Gredja (hereinafter, "Mr. Greja"), were the main perpetrators of this harassment and abuse.

11. Upon information and belief, Mr. Lawrence was related to the owner of Defendant.

12. Mr. Lawrence regularly referred to Plaintiff as "twinkle toes" in reference to his sexual preference and even named Plaintiff's contact "twinkle" in his cellular phone.

13. In one instance, upon learning that Plaintiff needed to visit the physician, Mr. McFarland stated, in the presence of Plaintiff's coworkers, that Plaintiff likely needed to visit the physician to "check for AIDs". Obviously, this is a reference to an offensive stereotype, which dates back to anti-homosexual political rhetoric of the 1980's, and to a lessor extent, the present day. This stereotype is known to be offensive to the LGBTQ community.

14. Furthermore, Mr. McFarland regularly made discriminatory comments toward Plaintiff and stated that Mr. Fox's sexual orientation "made him sick".

15. Additionally, Mr. Gredja stated on one occasion that he did not want Plaintiff to bring a Christmas tree to work because it was "too gay".

16. The constant discriminatory and harassing behavior detrimentally affected Plaintiff daily.

17. However, Plaintiff could not report the discrimination for fear of termination from his position.

18. The individuals who discriminated against Plaintiff were his superiors, and further, as previously stated, Mr. Lawrence was related to the owner of Defendant.

19. On or about November 13, 2020, Plaintiff learned that Mr. McFarland had contracted COVID-19 and further, that the facility, in which they both worked, had not been properly sanitized following this diagnosis.

20. Plaintiff immediately contacted his physician.

21. Both Plaintiff, and his mother who resides in the same household as Plaintiff, are individuals at high-risk for COVID-19 complications.

22. As a result, on or about November 16, 2020, Plaintiff's physician, Thomas G. Shetter, M.D., provided Plaintiff with a note which indicated that he was advised to quarantine for 14 days due to the exposure. A true and correct copy of the note from Plaintiff's physician is attached hereto, made a part hereof, and referenced as Exhibit "A".

23. On or about November 17, 2020, Plaintiff provided this note to Defendant along with a request for FFCRA leave. A true and correct copy of Plaintiff's request for FFCRA leave is attached hereto, made a part hereof, and referenced as Exhibit "B".

24. When Plaintiff's supervisor, Mr. Lawrence learned of this leave, he called Plaintiff and asked, "are you really taking off?"

25. Plaintiff replied "yes, doctor's orders." Mr. Lawrence then proceeded to say, "thanks for f**king us over."

26. Plaintiff reported this interaction to Employer's Operations Director, Mr. Lawrence's relative, Andy Lawrence.

27. Mr. Lawrence learned of this report and subsequently informed Plaintiff that he would not have a job when he returned.

28. On November 25, 2020, while preparing to return to from FFCRA leave in the coming days, Plaintiff received a letter and email which stated that he was to be laid off, effective December 1, 2020. A true and correct copy of the termination letter is attached hereto, made a part hereof, and referenced as Exhibit "C".

29. Discriminatory comments concerning Mr. Fox's sexual orientation were made up to the date of Mr. Fox's termination.

30. Plaintiff has not been recalled, to date, and therefore was effectively terminated during his FFCRA leave.

## COUNT I
## RETALIATORY TERMINATION IN VIOLATION OF THE FFCRA

31. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

32. The FFCRA requires employers to provide specified employees with paid leave because of a "qualifying need related to a public health emergency." 116 P.L. 127, 2020 Enacted H.R. 6201, 134 Stat. 178 §3102(a)(1)(F).

33. According to the FFCRA, a "public health emergency" means "the declaration of a public health emergency, based on an outbreak of SARS-CoV-2 or another coronavirus with pandemic potential," based on declaration by the Secretary of Health and Human Services. 116 P.L. 127, Enacted H.R. 6201, 134 Stat. 178 §1101(h)(2).

34. On January 30, 2020, Health and Human Services Secretary Alex M. Azar II declared a public health emergency under section 319 of the Public Health Service Act (42 U.S.C. 247d) for the entire United States in response to the novel 2019 coronavirus.

35. The FFCRA defines a "qualifying need related to a public health emergency" as a situation where the employee is "unable to work (or telework) due to a need for leave because. . . the employee has been advised by a health care provider to self-quarantine due to concerns related to COVID-19." 116 P.L. 127, Enacted H.R. 134 Stat. 178 §5102(a)(2).

36. Because Plaintiff worked for Defendant for longer than 30 days, Plaintiff is an "eligible employee" as defined by the FFCRA. 116 P.L. 127, Enacted H.R. 6201, 134 Stat. 178 §3102(b)(a)(1)(A).

37. Because Defendant employed fewer than 500 employees, Defendant is a "qualifying employer" as defined by the FFCRA. 116 P.L. 127, Enacted H.R. 134 Stat. 178 §3201(b)(a)(1)(B).

38. Under the FFCRA, it is illegal for an employer to "discharge, discipline, or in any other manner discriminate against any employee who takes leave in accordance with [the] Act." 116 P.L. 127, Enacted H.R. 134 Stat. 178 §5104(1).

39. Any employer who terminates an employee in such circumstances shall "be considered to be in violation of section 15(a)(3) of the Fair Labor Standards Act of 1938 (29 U.S.C. 215(a)(3))." 116 P.L. 127, Enacted H.R. 134 Stat. 178 §5105(a).

40. Further, an employer who terminates an employer shall "be subject to the penalties described in section 16 and 17 of [the Fair Labor Standards Act] . . . with respect to such violation." 116 P.L. 127, Enacted H.R. 134 Stat. 178 §5101(b).

41. On or about November 13, 2020, Plaintiff learned that Mr. McFarland had contracted COVID-19 and further, that the facility, in which they both worked, had not been properly sanitized following this diagnosis.

42. Plaintiff immediately contacted his physician.

43. Both Plaintiff, and his mother who resides in the same household as Plaintiff, are individuals at high-risk for COVID-19 complications.

44. As a result, on or about November 16, 2020, Plaintiff's physician provided Plaintiff with a note which indicated that he was advised to quarantine for 14 days due to the exposure. *See* Exhibit "A".

45. On or about November 17, 2020, Plaintiff provided this note to Defendant along with a request for FFCRA leave. *See* Exhibit "B".

46. When Mr. Lawrence learned of this leave, he called Plaintiff and asked, "are you really taking off?" Plaintiff replied "yes, doctor's orders." Mr. Lawrence then proceeded to say, "thanks for f**king us over."

47. Plaintiff reported this interaction to Employer's Operations Director, Mr. Lawrence's relative, Andy Lawrence.

48. Mr. Lawrence learned of this report and subsequently informed Plaintiff that he would not have a job when he returned.

49. On November 25, 2020, while preparing to return to from FFCRA leave in the coming days, Plaintiff received a letter and email which stated that he was to be laid off, effective December 1, 2020. *See* Exhibit "C".

50. Plaintiff has not been recalled, to date, and therefore was effectively terminated during his FFCRA leave.

51. As a direct and proximate result of the aforementioned conduct, Plaintiff suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

52. As set forth hereinabove, the Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

## COUNT II
## SEXUAL ORIENTATION DISCRIMINATION
## IN VIOLATION OF TITLE VII AND THE PHRA

53. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

54. Under Title VII, it is illegal for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.S. §2000e-2(a)(1).

55. Title VII makes it unlawful for an employer to discriminate against an individual "because of" the individual's sex, by subjecting an individual to an adverse employment action for being homosexual or being a transgender person. When an employer subjects a person to adverse employment action for traits or actions that the employer would not have questioned in members of a different sex, then sex plays a necessary and undisguisable role in the decision, which is exactly what Title VII forbids. *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020) (citing to Civil Rights Act of 1964 § 703(a)(1), 42 U.S.C.A. § 2000e-2(a)(1)).

56. The same legal standards apply to Title VII and PHRA claims. *Connelly v. LaneConstr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 (3d Cir. 2000)). Further, the same standards apply to claims under Title VII and the PHRA on a summary judgment motion. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). Accordingly, the Court's analysis of the Title VII claims also applies to the PHRA claims. *Phillips v. Septa*, CIVIL ACTION NO. 16-0986, 6-7 (E.D. Pa. Feb. 12, 2018).

57. To establish a *prima facie* case of sexual orientation discrimination, a plaintiff must show: "(1) he is a member of a protected class; (2) he was qualified for the position she sought to attain or retain; (3) he suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably or the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Langley v. Merck*

*& Co.*, 186 Fed Appx. 258 (3d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 36 L. E.D. 29 668 (1973). See also *Makky v. Chertoff*, 542 F.3d 205, 214 (3d Cir. 2008).

58. As previously stated, Plaintiff is a homosexual male and is therefore a member of a protected class under Title VII.

59. Plaintiff was highly qualified for the position he held with Defendant given his seven years dedicated to Defendant and his promotion to batch manager.

60. Plaintiff suffered adverse employment actions in the form of constant discriminatory harassment and ultimately termination from employment.

61. These adverse employment actions give rise to a clear inference of intentional discrimination given the constant discriminatory comments and harassment Plaintiff suffered on the basis of his sexual orientation.

62. As a direct and proximate result of the aforementioned conduct, Plaintiff suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

63. As set forth hereinabove, the Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

**COUNT III**
**HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF TITLE VII AND THE PHRA**

64. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

65. A plaintiff may prove that an employer violated Title VII by showing employer's actions created a hostile work environment. "To establish a hostile work environment claim, a plaintiff must establish that: (1) the employee suffered intentional discrimination because of his or her protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in this position; and (5) there is a basis for employer liability." *Clair v. Agusta Aerospace Corp.,* 592 F. Supp. 2d 812, 821 (E.D. Pa. 2009)).

66. The same legal standards apply to Title VII and PHRA claims. Connelly v. LaneConstr. Corp., 809 F.3d 780, 791 (3d Cir. 2016) (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 (3d Cir. 2000)). Further, the same standards apply to claims under Title VII and the PHRA on a summary judgment motion. *Jones v. Sch. Dist. of Phila*., 198 F.3d 403, 410 (3d Cir. 1999). Accordingly, the Court's analysis of the Title VII claims also applies to the PHRA claims. *Phillips v. Septa*, CIVIL ACTION NO. 16-0986, 6-7 (E.D. Pa. Feb. 12, 2018).

67. As previously delineated, Plaintiff was subjected to constant discrimination and harassment on the basis of his sexual orientation.

68. This discrimination and harassment, detrimentally affected Plaintiff daily and would detrimentally affect any reasonable person in the same position.

69. Furthermore, Defendant is liable for this harassment and discrimination as one of main individuals who were party to this treatment was Plaintiff's supervisor.

70. As a direct and proximate result of the aforementioned conduct, Plaintiff suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

71. As set forth hereinabove, the Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: November 9, 2021     By: _____
                               Joshua P. Ward (Pa. I.D. No. 320347)
                               Kyle H. Steenland (Pa. I.D. No. 327786)

                               J.P. Ward & Associates, LLC
                               The Rubicon Building
                               201 South Highland Avenue
                               Suite 201
                               Pittsburgh, PA 15206

                               Counsel for Plaintiff